McLELLAN v. BROWN et al. (No. 6140.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 22, 1919. Rehearing Denied Feb. 19, 1919.)

1. PUBLIC LANDS ⬥⟹221—SPANISH GRANTS— SURVEYS—ESTOPPEL.

An erroneous survey of a valid Spanish grant by a county surveyor, the field notes of which included less land than the original grant, did not create an estoppel in favor of the state so as to make the excluded land vacant, where such survey was not made by authority of the owners of the original grant.

2. PUBLIC LANDS ⬥⟹221—SPANISH GRANTS— SURVEYS.

In an action by a grantee of the state to recover possession of land bought by him as

public land, which was vacant according to an erroneous survey, such survey, when not made on authority of the owners of the original Spanish grant of which the vacancy was a part, did not estop them from claiming the land.

3. TRESPASS TO TRY TITLE ☞12—PRIOR POSSESSION—INCLOSURE.

When land is inclosed by a substantial fence at a time defendant forcibly enters thereon, plaintiffs in trespass to try title are entitled, in the absence of title in defendant, to recover on the strength of their prior possession, notwithstanding they have failed to show title because the land has not been inclosed for the statutory period.

Appeal from District Court, Hidalgo County; V. W. Taylor, Judge.

Action by James A. Brown and others against W. H. McLellan, with cross-action by defendant. Judgment for plaintiffs, and defendant appeals. Affirmed.

Frank C. Pierce and James A. Graham, both of Brownsville, for appellant.

F. W. Kibbe, of Brownsville, G. R. Scott and Boone & Pope, all of Corpus Christi, G. C. Robinson and Dougherty & Dougherty, all of Beeville, for appellees.

MOURSUND, J. The issue as made by the pleadings on which a trial was had was whether the appellees owned a certain tract of 266 acres of land in Hidalgo county, either by record title or by limitation under the ten-year statute. We have thus stated the issue for the reason that appellees were plaintiffs. The defendant, in addition to putting the plaintiffs on proof of their title, affirmatively pleaded estoppel, and by cross-action sought to recover by virtue of a purchase of such land by him from the state in 1909.

The trial resulted in a judgment in favor of plaintiffs for the land and for nominal damages. At defendant's request the court filed conclusions of fact and law.

We will not copy the 46 findings of fact, but will undertake to make a statement full enough to give the appellant the benefit of all facts found which even remotely bear on the issues presented in his brief.

About 1789 the Spanish government by valid grant, confirmed in 1852 by the Texas Legislature (section 2, vol. 3, Gammel's Laws), granted to Juan Jose Hinojosa a tract of land on the Rio Grande river containing about 25½ leagues, in the form of a rectangle, known as the Llano Grande grant, the lines of which were run upon a magnetic course, the eastern and western lines, called for as running north and south, being run, without correcting the variation, as would have been necessary to run the lines true north and south.

In 1834 the state of Tamaulipas made a valid grant to Lino Cabasos of five leagues of land known as the La Blanca, lying west of the Llano Grande grant, along its entire west line, and calling for certain well-known land marks in the west line of said Llano Grande grant. This grant was duly recorded in Cameron county in 1849. Hidalgo county was created out of Cameron county in 1852. No patent was taken out for either of said grants.

In 1847 the then owners of the Llano Grande grant partitioned the same, said partition being made by running lines perpendicular from a base line along the river true north a short distance to a point a short distance south of the military road, such lines, however, having never been run out their full length. The extreme west line called to run through the Puerta La Blanca, a well-known landmark called for as a mark near the river of the west line of the Llano Grande grant.

In 1877 one Fields, deputy surveyor of Hidalgo county, made a resurvey of the Llano Grande grant, and the map and field notes thereof were recorded in the surveyor's records of said county, and were in 1879 filed in the general land office. These field notes were erroneous and conflicted with the original field notes of the La Blanca grant, due to the fact that the western boundary of the Llano Grande was run upon a course of 55 minutes west of true north instead of magnetic north as originally run. Plaintiffs, and those under whom they hold, never participated or acquiesced in said resurvey.

Field notes of a resurvey of the La Blanca grant, made by Salinas and Haynes, and a plat thereof, were recorded in the surveyor's records of Hidalgo county and filed in the general land office in 1879. This resurvey was made on the ground, and began at the southwest corner of the Llano Grande grant, and from there the eastern boundary was run north by the needle, or magnetic north, to correspond with the original eastern boundary of the La Blanca. The field notes contain the recital that the survey was made for the heirs and legal assigns of Lino Cabasos. No other evidence was introduced as to who caused such resurvey to be made.

The result of the two resurveys above described was that the triangular piece of land in controversy was not included in either survey, although a part of the original Llano Grande grant.

In April, 1874, a map by the district surveyor of the district, which included Hidalgo county, was filed as an archive in the general land office, and remains on file, which showed that the eastern boundary of the La Blanca and the western boundary of the Llano Grande coincided, and that said line was run magnetic north and south without correcting the variation of the compass.

Maps of Hidalgo county, prepared by the general land office and on file therein, one dated April, 1880, and the other April, 1896, show

the location of Llano Grande grant as resurveyed by Field; that is, show the land in controversy as a vacancy.

In January, 1909, defendant made application to the county surveyor to survey as vacant land the land in controversy, and such survey was made and duly recorded. On May 1, 1909, defendant applied to purchase said land under the act of May 16, 1907, in regard to sale of school lands without settlement, and on May 15, 1909, it was sold to him on the terms prescribed by statute for the sale of school lands.

In 1852 the title to the western two leagues of the Llano Grande and the eastern two leagues of the La Blanca was in the surviving wife and "one sole heir" of Antonio Martinez Chapa, who by deed duly recorded in 1853 conveyed to John Young a tract out of the western portion of the Llano Grande grant, the west line of which was recited to be coincident with the division line of the La Blanca and Llano Grande grants. The heirs of the grantors in the deed to Young conveyed to James G. Browne by deed recorded in 1869 the eastern league of the La Blanca grant, running all the way from the river to the back line of the original grant, describing it as bounded on the east by the Llano Grande grant.

In 1869 James G. Browne went into possession of the land in controversy and of the La Blanca league conveyed to him, and used said tract in controversy, claiming it as his own, cutting and selling timber therefrom. This possession continued down to the time in 1909 when the defendant entered upon the land and took possession by cutting plaintiffs' fences. The court in several findings describes the nature of the possession and use, and the extent of the inclosure at various periods of time, but also states in the thirtieth finding that the possession and use was such as to give plaintiffs title by limitation to all the land at the time defendant interfered with such possession, and finds, and such finding is not attacked, that plaintiffs were in actual possession of and had inclosed all of the land in controversy at the time of such forcible entry by defendant.

It is contended that the evidence shows that the land in controversy was public land in 1909, and subject to be sold by the state to the defendant, and that it was sold to him, and therefore the judgment is erroneous. The first proposition under the assignment reads as follows:

"Though the land in controversy was included within the boundary of the Llano Grande grant as originally surveyed, and as granted by the crown of Spain in 1789, the fact that the then owners of said grant, in accordance with the provisions of the act of the Legislature of 1852 as found at page 949, vol. 3, Gammel's Laws of Texas, caused said grant to be resurveyed in 1877, and caused the field notes and a plat of said resurvey to be filed and recorded in the general land office of the state of Texas, and also caused said field notes and said plat to be filed and recorded in the surveyor's records of Hidalgo county, Tex., where said land was then situated, as being the correct location of said grant on the ground, coupled with the fact that the state of Texas at all times thereafter relied on the said field notes and plat of said grant as being correct, and, so relying thereon, treated the land in controversy as public land, and sold same to appellant, who at the time of his purchase believed the state owned the land, as a matter of law estopped appellees from denying the land in controversy in this suit was vacant or public land at the time the state sold same to appellant; and the judgment of the trial court should therefore have been for appellant for the title and possession of said land, for the rental value thereof in the sum of $2,200, for the value of improvements thereon situated and converted by appellees in the sum of $600, with 6 per cent. interest per annum on both of said sums from March 21, 1918, for dissolution of the injunctions theretofore issued and served in this cause, and for costs of suit."

The proposition does not correctly state the facts. The court did not find, and there is no assignment complaining of his failure to find, that the persons who owned the Llano Grande grant at the time of the Fields resurvey caused or procured or had any knowledge of such resurvey, or caused the field notes thereof to be recorded in the surveyor's office or to be transmitted to the general land office. Nor do we see how the court could have made such a finding had he been requested to do so, for it would have to be based on the mere presumption that Fields would not have made such survey and would not have recorded the field notes had he not been caused to do so by some one interested in or claiming an interest in the Llano Grande grant. There is no evidence that any of the owners of the grant did any act on which estoppel in favor of the state could be predicated.

[1] We consider the opinion in the case of Corrigan v. State, 42 Tex. Civ. App. 171, 94 S. W. 95, approved by the Supreme Court, 94 S. W. 101, to be decisive of this question. The authorities relied on by appellant, which are collated in Kennedy Pasture Co. v. State, 196 S. W. 293, are not applicable to the facts of this case.

[2] The second proposition is that appellees and those under whom they claim were parties to, and bound by, the resurveys of the Llano Grande grant and the La Blanca grants made in 1877 and 1879, as well as by the placing of record of the field notes and plats of said surveys in the surveyor's office and the general land office in such manner as to result in the land in controversy becoming vacant or unappropriated public land owned by the state of Texas. While there is no evidence showing who was responsible for the resurvey of the La Blanca grant, it would make no difference even if those under whom

plaintiffs hold had such resurvey made; for it was a correct survey, and could not mislead any one.` In fact, the survey recites in a "note" to such field notes that there is annexed thereto a copy of the original grant "which was surveyed in accordance with the original corner stones as found upon the ground and in accordance with the adjoining tracts called for in said original grant." The Salinas field notes call for the east line to begin at the S. W. corner of the Llano Grande grant, describing it, and to run 3,442 varas to a large stone designated in the original map and field notes as the "Lindero de la Puerta de la Blanca," and referred to generally as the Puerta La Blanca, a prominent call in the original Llano Grande grant. The field notes prepared by Fields are not contained in the statement of facts, but it is found by the court that the western boundary line of the Llano Grande grant as located by Fields runs through the point called Puerta La Blanca, and from the field notes prepared by the surveyor Gore of the land in controversy it appears that he started at the Puerta La Blanca and ran S. 0° 55' E. 4,401.5 varas to a stake on the Rio Grande for the S. W. corner of the Llano Grande grant; thence up the river to the point designated in the Salinas field notes as the Llano Grande S. W. corner; and thence with Salinas east line of the La Blanca back to the Puerta La Blanca. This indicates that Fields did not look for the original S. W. corner of the Llano Grande grant, but started at the Puerta La Blanca, and called for a stake at the river where his line would intersect the same. The result of the Fields survey was to show a small vacancy between the two grants south of Puerta La Blanca and a tremendous conflict between the grants north of that point. An examination of the Salinas field notes would put any one on notice that the west line of the Llano Grande grant was believed by Salinas to be at a different place from that indicated by Fields, and would therefore be calculated to prevent a misconception instead of aiding it. Certainly the resurvey of the La Blanca, if chargeable to its owners, did not cause or contribute to cause the mistake in the maps. Now, as to the resurvey of the Llano Grande grant, the court found that the plaintiffs and those under whom they hold never participated in or acquiesced in such survey. Such finding is attacked in the second assignment of error, but we find no evidence showing any participation or acquiescence on the part of plaintiffs or those under whom they hold in the Fields resurvey. They were not owners of any part of the Llano Grande grant in 1877 or 1879, or thereafter, unless and until they acquired title by limitation to the land in controversy, if they did so. Plaintiffs have no record title to the land in controversy, as it is no part of the La Blanca league. Their predecessor in interest, James G. Browne, who went into possession thereof in 1869, is not shown to have been in any way instrumental in having the Fields resurvey made, or to have had any actual knowledge thereof. It seems clear that estoppel in favor of the state cannot be predicated on the acts, or failure to act, of any one under whom plaintiffs claim.

The third proposition is to the effect that the facts show an agreed boundary line between the state and all those owning or claiming any interest in the Llano Grande and La Blanca grants at the time the resurveys of said grants were made and the field notes placed of record. We consider it obvious that there is no issue of agreed boundary line in the true sense of the term, and that the proposition, in so far as it is worthy of consideration, merely repeats the contentions already disposed of.

Before passing from the question of estoppel we call attention to the fact that there is no contention that the plaintiffs are estopped to claim the land as against defendant by reason of misleading him in any way to his injury.

The only other assignment of error complains of the trial court's thirtieth finding of fact, wherein he in effect finds that the plaintiffs had acquired the lands in controversy by limitation. The statement of facts recites that testimony was introduced showing "that since 1897 all of said tract of land has been inclosed by a substantial fence." There can be no question concerning the actual occupancy of the land by tenants or the continual use thereof by cultivation and grazing stock thereon during the time it was so inclosed. The statement of facts sustains the conclusion complained of.

[3] However, even if plaintiffs had failed to show title to a part of the land, by reason of its not being inclosed for the statutory period, the fact remains that it was inclosed when defendant forcibly entered thereon, and plaintiffs were entitled, in the absence of title in him, to recover the same on the strength of their prior possession. Crafts v. McAllen, 196 S. W. 729.

The judgment is affirmed.